IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

NICOLE STETLER, Individually and on behalf of
the Estate of Randall Thomas Stetler, Deceased,

        Plaintiff,

v.                                  No. CIV 07-304 BB/ACT

MAYFLOWER TRANSIT, L.L.C.; SWIFT
TRANSPORTATION CO., INC.; COVENANT
TRANSPORT, INC.; KENETH DAGGETT;
WILLIAM STEELE; JOHN PENNINGTON;
GRANTS PASS, L.L.C.; WESTERN STATES
MANAGEMENT, LTD.; and WESLEY ADAMS,

        Defendants.

MEMORANDUM OPINION
AND
ORDER DENYING MOTION TO DISMISS

THIS MATTER is before the Court on the motion of Defendants Grants Pass, L.L.C., and Wesley Adams ("Defendants") seeking to have all claims against them dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having considered the briefs of counsel and further researched the law, the motion must be Denied.

*Discussion*

This case arises from a vehicular accident that occurred April 28, 2004.  It is undisputed strong winds blew enough dust to reduce the visibility on Interstate 40 to near zero.  A number of tractor-trailer rigs entered this dust cloud, and a chain-reaction  motor vehicle collision

ensued eventually involving four tractor-trailer rigs.  Plaintiff's decedent was killed in the sleeper birth of one of the rigs.  Plaintiff maintains "[a] state police investigation pointed to an adjacent barren field, allegedly owned by Defendants, as the culprit of the dust storm.  The high winds easily picked up dirt from the field and blew the brown mess across I-40."  (Pl.'s Resp. Br. p. 2.)

Defendants contend "owners of vacant land do not owe a duty to change the natural condition of that land to protect persons traveling off the land on an adjacent public highway." (Defs.' Mem. in Supp. p. 1, relying on *Hamilton v. Swift Transportation Company*, First Judicial Dist. Ct. Civ. No. D-101-CV-2004-1083 (Garcia, J., Mem. Op. 3/4/05)).  Plaintiff denies that her claim against Defendants derives from the natural conditions of the land and notes the complaint actually alleges "Defendant Landowners through their actions altered the natural conditions of the land in question and thereafter had a duty to maintain the land so as to prevent unreasonably dangerous conditions such as the dust storm"  (Pl.'s Resp. p. 3, citing *Bober v. New Mexico State Fair*, 808 P.2d 614, 621 (N.M. 1991)).

### *Standard for Consideration of Rule 12 Motion*

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must consider all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," *id.* quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), or when an issue of law is dispositive.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The

2

Court's function on a Rule 12(b)(6) motion "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief might be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). The dismissal of a complaint is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Summum v. Calaghan*, 130 F.3d 906, 913 (10th Cir. 1997).

### *New Mexico Authority*

Not surprisingly, there is no New Mexico precedent on all fours. There are two reported appellate decisions as well as the unreported *Hamilton* district court decision submitted by Defendants, all of which address the problem only tangentially.

In *Gabaldon v. Sanchez*, 585 P.2d 1105 (N.M. App. 1978), plaintiff sought damages and injunctive relief under the New Mexico Subdivision Act. The claim was based on allegations that the defendant had stripped his land of vegetation thereby allowing topsoil to blow on plaintiff's land. The district court concluded defendant violated the Subdivision Act and his actions constituted negligence, nuisance, and trespass. Judge Sutin, with Judge Lopez concurring, reversed holding plaintiff had no claim for damages under the Subdivision Act and that defendant had a common law right to remove brush and vegetation free from all liability to adjoining landowners. Judge Hernandez dissented, concluding the majority had misconstrued the basic issue and noting the focus should not be on the Subdivision Act or concepts of trespass but rather the foreseeability of the damage that occurred.

Although the opinion is so cryptic it is hard to know for sure, Judge Timothy Garcia seems to have picked up on the *Gabaldon* majority opinion in his *Hamilton* order. (Indeed, this

3

is a classic example of why opinions designed only to address a discreet problem of the litigating parties are not published.)  In less than a page, without recitation of significant facts or citation to any legal authority, Judge Garcia dismissed the third-party complaint "on the basis that an owner of private property has no duty to alter or change the natural state of the property for the safety of persons traveling on a public highway located off the property." (Slip op. p. 2).  Since Plaintiff in the instant case alleges that by grazing cattle Defendants have changed the "natural state of the property," it seems clear that Judge Garcia's language would not be applicable to present facts in any event.

Both sides also cite *Bober v. New Mexico State Fair*, 808 P.2d at 614.  In that case, plaintiff was injured when a rock concert at the adjacent New Mexico State Fairgrounds adjourned and a car turning onto an Albuquerque city street collided with the plaintiff's vehicle.  The trial judge granted summary judgment on the theory that since the accident took place outside of defendant's land and Bober was a mere passerby, the State Fair owed her no duty.  In reversing, the New Mexico Supreme Court initially recognized that a landowner's duty to avoid creating or permitting an unsafe condition is not limited by the physical boundaries of the land, citing *Calkins v. Cox Estates*, 792 P.2d 36 (N.M. 1990), and *Mitchell v. C&H Transp. Co.*, 565 P.2d 342 (1977).  The Supreme Court then found that the district court failed to address specific steps the defendant could have taken to prevent a foreseeable accident but noted, "it did hold that the Fair's duty, whatever it was, did not extend outside the Fairground and into the City street.  In this we believe the court was in error."  808 P.2d at 620.  Speaking for the Supreme Court, Justice Montgomery noted a landowner must take reasonable precautions to prevent foreseeable harm:

As the party moving for summary judgment, the State Fair had the burden of making a prima facie showing that there was no genuine issue that it exercised ordinary care in guarding against the dangerous situation that existed at the exit from the Fairground into Louisiana Boulevard on the night of October 26, 1985.  It had the burden of adducing some evidence to show that what it did, and did not do, in connection with the stream of traffic leaving the Fairground after the concert at Tingley Coliseum did not give rise to an unreasonable risk of harm to the traveling public in Louisiana Boulevard and that its conduct on the occasion was what an ordinary person would have done under the same circumstances.  The State Fair did not meet this burden.  Bober, on the other hand, presented enough evidence – of the number of cars in the infield parking lot having to use the single exit into the heavily traveled street – <u>to give rise to an inference that the State Fair could reasonably have foreseen the risk of an accident and that a reasonable landowner would have taken precautions to reduce the risk</u>.

808 P.2d at 621-22 (emphasis added) (citation omitted).

Defendants maintain *Bober* applies only to developed land in an urban setting.  Plaintiff responds that these Defendants altered the natural condition of their land by grazing their cattle on it and notes *Bober* nowhere states it is intended to apply only to an urban setting.  Moreover, Plaintiff's allegations herein that the identical type of accident occurred because of blowing dust on this very strip of I-40 just five days before the accident at bar raise the same type of foreseeability issues found in *Bober*.

Defendants, then, seem to focus on the plaintiff's status to define duty as did the *Gabaldon* majority, while Plaintiff gravitates toward the defining duty through the lens of the foreseeability of the specific harm to adjacent users that was set out in the *Gabaldon* dissent and *Bober*.  Since *Bober* is the most recent New Mexico authority and emanates from its highest court, this Court is inclined to consider the foreseeability most persuasive.  *Romero v. Int'l Harvester Co.*, 979 F.2d 1444, 1449 n. 3 (10th Cir. 1992) (in diversity cases we are "obligated to follow pronouncements of that state's highest court).  Moreover, more recent

5

New Mexico decisions seem to continue the *Bober* trend away from relying on the status of the injured person and toward a consideration of whether the landowner acted reasonably given the foreseeability of the injury. *See Ford v. Bd. of County Comm'rs*, 879 P.2d 766, 769-70 (N.M. 1994); *cf.* UJI 13-1309 (an owner owes a visitor the duty to use ordinary care to keep his premises safe for use by the visitor, whether or not a dangerous condition is obvious).  Thus, New Mexico law seems to have moved away from analyzing a landowner's legal responsibility toward adjacent users in terms of premises boundaries or duty to a given class of landusers (*e.g.*, invitees) and toward defining duty based on the foreseeability of the injury at issue.

### *Other Jurisdictions*

New Mexico's tendency to define duty through the lens of foreseeability of injury is also consistent with the general trend in other jurisdictions.[1] Under this analysis, the existence of a duty turns upon whether the injury to those on adjacent premises, or passing by, was foreseeable.[2]

While the existence of a duty to a particular plaintiff has traditionally been seen as a legal issue for the court, *Solon v. WEK Drilling Co.*, 829 P.2d 645, 650 (N.M. 1992),

---

[1] **Walter M. Rogers, *"[I]t's All Right to Kill People, But Not Trees": Landowners of Environmentally Unsafe Properties Must Be Held Strictly Liable for Personal Injuries Caused by Their Contaminated Land*, 66 Notre Dame L. Rev. 893 (1991);  *In re Flood Litig.*, 607 S.E.2d 863, 870-71 (W. Va. 2004); *Volpe v. Gallagher*, 821 A.2d 699, 710 (R.I. 2003); *Louis v. Louis*, 636 N.W.2d 314, 319 (Minn. 2001); *Goodman v. Memphis Park Comm'n*, 851 S.W.2d 165, 166 (Tenn. App. 1992).**

[2] **Peter Lopez, *Foreseeable Zone of Risk: An Analysis of Florida's Off-Premises Liability Standard*, 55 U. Miami L. Rev. 397 (2001); *Novak v. Capital Management & Dev. Corp.*, 452 F.3d 902, 912-13 (D.C. Cir. 2006); *Davis v. Dollar Rent A Car Sys.*, 909 So.2d 297, 301-2 (Fla. App. 2004); *Zakoff v. Chicago Transit Auth.*, 782 N.E.2d 873, 878 (Ill. App. 2002); *Smaxwell v. Bayard*, 682 N.W.2d 923, 943 (Wisc. 2004); *Kellner v. Lowney*, 761 A.2d 421, 424 (N.H. 2000).**

foreseeability is a factual question unless a court can determine that the victim was completely unforeseeable to any reasonable mind. *Torres v. State*, 894 P.2d 386, 390 (N.M. 1995). Taking Plaintiff's complaint at face value, then, Defendants' legal responsibility depends on whether a reasonable person would have foreseen the likelihood of an accident caused by blowing dust from conditions created or recognized by Defendants. This issue cannot be resolved as a matter of pure legal duty under Rule 12(b).

## O R D E R

For the above stated reasons, *Defendants Grant Pass, LLC and Wesley Adams's Motion to Dismiss* [doc. 10] is DENIED.

SO ORDERED this 26th day of June, 2007.

BRUCE D. BLACK
United States District Judge